UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARCO MARROQUIN,

    Petitioner,

vs.

BEN CURRY, Warden,

    Respondent.

No. C 08-3153 PJH (PR)

**ORDER DENYING HABEAS PETITION**

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to a denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition will be denied.

## BACKGROUND

A Los Angeles County jury convicted petitioner of second-degree murder with use of a gun. He was sentenced to prison for fifteen years to life. He began serving that sentence in December of 1993. He alleges that he has exhausted these parole claims by way of state habeas petitions.

On July 25, 2007, after a hearing before the Board of Parole Hearings ("Board"), during which petitioner was represented and was given an opportunity to be heard, the Board found petitioner unsuitable for parole. Pet., Ex. A at 1-50.

The Board's Presiding Commissioner read the facts of the crime, taken from the appellate opinion, into the record. He apparently started reading in the middle of the

appellate opinion's statement of the facts, and thus had to return to the beginning.  For the sake of clarity, the quotations below are rearranged into chronological order.

> [T]he evidence established that in August of 1991, Luis Silva and his girlfriend, Delicia Lopez . . . agreed to buy a car from Mr. Marroquin.  Silva drove the car for several days and after discovering that it had quote, a lot of defects, unquote, he returned the keys to Mr. Marroquin.  Marroquin did not want the keys back and told Silva that he wanted $1,000.00 for the days the car was used.  Silva replied that if he had had the $1,000.00, he would pay him for the car.  Mr. Marroquin told Silva that he would, quote, he would regret what he had done to him, unquote.

*Id.* at 9-10.

> At around 10:00 p.m. on January 12, 1992, Mr. Marroquin and another man entered . . . LaBajadita Bar in Compton.  Before entering, the security checked the two men for weapons and found none.  A little later, Silva also entered the bar, but did not sit with Mr. Marroquin.  Both men ordered beer.  None of the personnel at the bar recall seeing any argument between Mr. Marroquin and Silva or even seeing [the] men approach each other while inside the bar.

*Id.* at 9.

> At some point, Silva left the bar to move his car which was blocking a driveway.  Several minutes later, Marroquin also left.  About ten minutes later, Marroquin and his companion tried to reenter the bar, but were stopped by the security guard because Marroquin was carrying a gun.  Both men then walked away to about three car lengths from the bar's entrance.  Meanwhile, Silva crossed the street and was walking towards the bar when Marroquin approached him and began yelling obscenities and vulgarities at him.  Marroquin told him he had to pay for the car and that he really wanted to kill him.  Silva did not reply when he was being yelled at and he did not have anything in his hands.  Silva finally told Mr. Marroquin that he did not want to have any problems with him.  Marroquin called Silva, quote son of the big whore, unquote, took a gun from his waistband and said, quote, I"m a real man and you're the type of guy that I would like to put a bullet through.  I'm going to kill you, end quote.  Appellant, Mr. Marroquin, then pulled back the slide of the gun and pulled the trigger, but it did not fire.  He then pulled the slide back a second time and shot Silva, who was about two feet away, in his side.  Silva bent over and the security guard placed him in the front of the doorway.  The bullet – in a footnote – entered and exited Silva's upper arm, then entered the abdominal cavity causing his death.  Silva said nothing.  Another footnote, Maria Gutierrez . . . who was selling hotdogs from a stand outside the bar, heard Marroquin swearing at Silva and saying that he wanted to kill him.  She did not see any fight between Marroquin and Silva before Marroquin pulled out the gun.  She saw no menacing gesture on the part of Silva, nor did she see anything in Silva's hands.  She did not see or hear Silva break a bottle or use a bottle in a jabbing motion.  The security guard also did not hear any glass breaking.  Marroquin and his companion turned and walked away.  The security guard and the manager of the bar ran up to several officers in a patrol car and directed them to where Marroquin was standing by a pickup truck with the gun still in his hand.  The officers held

Marroquin at gunpoint and ordered him to drop the gun. Marroquin complied with the officers' orders and threw his gun into a vacant lot. No weapons were found around Silva or in his clothing. There were no broken bottles around him either.

*Id.* at 10-12.

## DISCUSSION

### I. Standard of Review

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and

3

1 convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not
2 altered by the fact that the finding was made by a state court of appeals, rather than by a
3 state trial court.  *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d
4 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present
5 clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness;
6 conclusory assertions will not do.  *Id.*

7 Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual
8 determination will not be overturned on factual grounds unless objectively unreasonable in
9 light of the evidence presented in the state-court proceeding."  *Miller-El*, 537 U.S. at 340;
10 *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

11 When there is no reasoned opinion from the highest state court to consider the
12 petitioner's claims, the court looks to the last reasoned opinion.  *See Ylst v. Nunnemaker*,
13 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th
14 Cir.2000).

15 **II.     Issues Presented**

16     **A.     Respondent's Contentions**

17 In order to preserve the issues for appeal respondent argues that California
18 prisoners have no liberty interest in parole, and that if they do, the only due process
19 protections available are a right to be heard and a right to be informed of the basis for the
20 denial – that is, respondent contends there is no due process right to have the result
21 supported by sufficient evidence.  Because these contentions are contrary to Ninth Circuit
22 law, they are without merit.  *See Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying
23 "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v.*
24 *Hill*, 472 U.S. 445-455 (1985)); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123,
25 1128-29 (9th Cir. 2006) (the some evidence standard identified in *Hill* is clearly established
26 federal law in the parole context for purposes of § 2254(d)); *McQuillion v. Duncan*, 306 F.3d
27 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty
28 interest in release on parole.").

4

### B.     Petitioner's Claims

As grounds for federal habeas relief, petitioner asserts that: (1) his equal protection rights were violated when the State afforded more lenient treatment to a Swedish national than to him; (2) the Board's use of the "some evidence" standard violated his due process rights; and (3) there was not "some evidence" to support the decision.

#### 1.     Equal Protection

Petitioner contends that his equal protection rights were violated when the Board did not set a release date for him. The state apparently entered into a settlement agreement with a Swedish national that provided for the Swede's transfer to his home country and for his release from prison there on a date certain. Petitioner is not similarly situated to the other prisoner: He has not been granted a writ of habeas corpus, as the Swede had, and the State has not appealed; that is, in petitioner's case there is no reason for the state to enter into a compromise. There thus is a rational basis for treating the two differently. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000) (per curiam) (holding that "class of one" claim requires only that action be irrational and arbitrary, rather than requiring discriminatory intent).

#### 2.     Board's Use of "Some Evidence" Standard

Petitioner also contends that the Constitution requires that the Board not use a "some evidence" standard for deciding to deny parole. There is no evidence that the Board uses that standard in making its decisions, and none that it used it in making the decisoin at issue here. This claim is without merit.

#### 3.     Whether There Was Some Evidence to Support the Parole Denial

Petitioner contends that denial of parole was not supported by "some evidence" and thus violated his due process rights.

The Ninth Circuit has held that it violates due process if parole is denied without "some evidence in the record" to support the denial or if the denial is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985));

*McQuillion*, 306 F.3d at 904 (same).  Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [parole] board."  *Hill*, 472 U.S. at 455-56; *see Sass*, 461 F.3d at 1128.  "[The] some evidence standard  is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'"  *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

It is now established under California law that the task of the Board of Parole Hearings and the governor is to determine whether the prisoner would be a danger to society if he or she were paroled.  *See In re Lawrence*, 44 Cal. 4th 1181 (2008).  The constitutional "some evidence" requirement, therefore, is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole.  *Id.* at 1205-06.

The circumstances of the offense, in which a person was murdered because of a minor dispute over the sale of a car, was one basis for the Board's conclusion that petitioner would be a danger to society if paroled.  At the time of the hearing in 2007, petitioner was approximately fifty-one years old and had served a bit more than fourteen years on his sentence of fifteen years to life.  The court concludes that despite the passage of time the circumstances of the offense still are entitled to significant weight; whether they would be enough in themselves to constitute "some evidence" need not be resolved, because the denial also is supported by other evidence.

As the Board noted, petitioner had not worked in the prison, Pet., Ex. A at 17; had not learned the twelve steps despite purporting to participate in Alcoholics Anonymous for more than ten years, *id.* at 30-31; and had not developed any job plans if paroled, *id.* at 19.  Taken together with the facts of the offense, there was "some evidence" to support the denial.  *See Rosas v. Nielsen*, 428 F.3d 1229, 1232–33 (9th Cir. 2005) (facts of the offense

and psychiatric reports about the would-be parolee sufficient to support denial).

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 2, 2010.

PHYLLIS J. HAMILTON
United States District Judge

P:\PRO-SE\PJH\HC.08\MARROQUIN3153.RUL.wpd